1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ROBERT SMITH,                                )
                                             )
        Plaintiff,                )    Case No.  2:06-cv-01188-BES-GWF
                                             )
vs.                                          )    **ORDER**
                                             )
OFFICER JOE CASEY, et al.,                   )    **Re:    Documents Submitted for *In***
                                             )    ***Camera Review***
        Defendants.               )
_____ )

       This matter is before the Court in regard to Defendant Nye County, et.al.'s, Motion for Protective Order (#19) filed on November 5, 2007.  The Court has previously entered two orders relating to Defendant's Motion for Protective Order which primarily deal with Nye County's stipulation concerning its potential liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) (hereinafter "*Monell*").  *See Orders (#32, #48).*  Following the filing of Order (#48) on March 27, 2007, Defendants submitted allegedly privileged or irrelevant documents to the Court for *in camera* review on April 17, 2008 and filed their  Explanatory Memorandum in Support of Documents Submitted for *In Camera* Review (#59) on April 21, 2008.  Defendants Explanatory Memorandum includes an affidavit by the Assistant Sheriff of Nye County in support of Defendants' privilege claim.  Plaintiff filed his Explanatory Memorandum in Support of Documents Submitted for *In Camera* Review (#64) on May 7, 2008.

## BACKGROUND

       This case involves an "excessive force claim" under 42 U.S.C. § 1983 and related state tort law claims arising out of a February 14, 2006 incident involving Plaintiff Robert Smith and Nye County Sheriff's deputies Joe Casey and John Bergstrom.  On that date, Plaintiff Robert Smith telephoned the

1    Nye County Sheriff Office's emergency 911 number apparently to obtain emergency assistance for his

2    wife who had fallen in the shower.  During the 911 telephone call, Mr. Smith allegedly spoke to the

3    dispatchers in an abusive and profane manner and made derogatory, and perhaps threatening, statements

4    about the Nye County Sheriff and Sheriff's Office.  It was allegedly unclear to the dispatchers whether

5    Mr. Smith was calling to report an actual "911" emergency or was simply calling to complain about the

6    Sheriff and Sheriff's Office.  Mr. Smith's statements and the sound of a woman's voice in the

7    background also reportedly caused the dispatcher(s) to be concerned about a possible domestic dispute

8    at Mr. Smith's residence.

9         Sheriff's Deputies Casey and Bergstrom were dispatched to Mr. Smith's residence.  Deputy

10   Casey was the first officer to arrive and encountered Mr. Smith and a neighbor outside the residence.

11   Deputy Casey reportedly deployed his police dog and ordered Mr. Smith to walk toward him, which

12   Mr. Smith failed to do.  When Mr. Smith pulled away from Deputy Casey's attempt to physically

13   restrain him, Deputy Casey "tasered" him.   Deputies Casey and Bergstrom then "tasered" Mr. Smith

14   several more times.  As a result of the "tasering," Mr. Smith required emergency medical treatment.

15   Although Mr. Smith was not arrested or ultimately charged with any violation of the law, he was

16   apparently briefly held for purposes of obtaining a mental evaluation.

17        Plaintiff's Amended Complaint (#12) alleges a civil rights claim under 42 U.S.C. § 1983 and a

18   state law claim for battery against Defendants Casey and Bergstrom for the use of excessive force.

19   Plaintiff also alleges conspiracy claims against Defendants Casey and Bergstrom, and their superior

20   officers, Defendants Thomassian, Becht and Clark, on the grounds that they conspired to cover-up

21   and/or falsify evidence that would establish the unlawful use of excessive force and the violation of

22   Plaintiff's Fourth Amendment rights.  Plaintiff also alleges that the individual Defendants violated his

23   right of equal protection of the law pursuant to the Fourteenth Amendment.  Plaintiff seeks an award of

24   compensatory and punitive damages against the individual Defendants.  Plaintiff further alleges a claim

25   for compensatory damages against Defendant Nye County, pursuant to *Monell v. Department of Social*

26   *Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978), on the basis that its policies,

27   practices or customs regarding officer training, supervision and discipline caused the violation of

28   Plaintiff's constitutional rights.

1   Defendants have admitted "that some of the force applied to the Plaintiff via the Tasers was
2   excessive and would constitute a violation of the Fourth Amendment to the United States Constitution."
3   *See Defendants' Answer to Amended Complaint (#13)* ¶ 14 and *Defendants' Answer to Amended*
4   *Complaint (#15)* ¶ 14.  Defendants allege as affirmative defenses that their actions are protected by
5   absolute and/or qualified immunity.  In regard to Plaintiff's *Monell* claim, Nye County has agreed to
6   the entry of judgment against it for compensatory damages if, and only if, the fact finder finds that the
7   defendant officers violated the Plaintiff's constitutional rights as alleged in the Amended Complaint.  In
8   addition, Nye County agrees to entry of a nominal judgment against it if the finder of fact concludes
9   that any employee of Nye County violated Plaintiff's constitutional rights.  Based on Nye County's
10  stipulation, the Court has held that discovery regarding Nye County's policies, practices or customs is
11  moot and therefore precluded.  *See Order (#48).*

12   The documents submitted for *in camera* review primarily consist of internal affairs investigation
13  reports and other documents that were obtained during that investigation.[1]  Defendants' internal affairs
14  ("IA") investigator, Mary Huggins, conducted recorded interviews of the Defendant Officers and other
15  officers and employees of the Nye County Sheriff's Office.  Deputy Huggins also conducted recorded
16  interviews of Plaintiff Robert Smith, his wife, the neighbor woman who was present during the incident
17  and Nye County Fire Department personnel who provided emergency medical care to the Plaintiff.
18  Deputy Huggins also took photographs and prepared diagrams of the scene of the incident.  She also
19  apparently gathered and reviewed relevant documents, including Nye County policy and procedure
20  documents.

21   Deputy Huggins submitted a 228 page report regarding her investigation to the Assistant Sheriff
22  in charge of the Internal Affairs Division on August 14, 2006.  *See Defendants' Matrix (#58),* NYE
23  000554-781.  Deputy Huggins' report contains detailed summaries of the recorded witness statements, a
24  lengthy discussion of the applicable law relating to detention, arrest and use of force, and her factual
25  findings and conclusions regarding various officers' conduct in regard to the incident involving Plaintiff

27
28  [1]Defendants have also submitted certain policy and procedure documents that it objects to
producing on relevancy grounds.

3

1   Smith.  The report also contains Deputy Huggins' disciplinary recommendations and her

2   recommendations regarding changes in departmental policies or procedures.

3       After Deputy Huggins submitted her report, Sergeant Mark Medina was assigned to review

4   aspects of her findings and conclusions and conduct a follow-up investigation.  Sergeant Medina

5   conducted additional recorded interviews of Defendants Casey, Bergstrom and Thomassian.  He also

6   interviewed Assistant Sheriff Marshall and Sergeant Kelly Jackson.  Sergeant Medina prepared a 42

7   page written report, dated December 29, 2006, which contains his investigation findings, conclusions

8   and recommendations, and summaries of the officers' statements.  *See Defendants' Matrix (#58),* NYE

9   2081-2122.

10      Plaintiff has also attached as Exhibit "A" to his Explanatory Memorandum (#64) a May 14,

11  2007  "Notice of Findings" report by Assistant Sheriff Richard Marshall regarding the subject incident

12  and his findings and decisions on whether the officer that is the subject of that report violated

13  department policies.  Although the names of the persons discussed in this report are redacted, Plaintiff

14  can in all likelihood determine who they are based on the other information disclosed in this case.

15  Plaintiff's Explanatory Memorandum (#64) indicates that this document was obtained from the FBI.

16  Neither a redacted nor unredacted version of this document is included in Defendant's *in camera*

17  submission.

18      Defendants have already produced the transcripts of the IA investigators' recorded interviews of

19  the officers and other witnesses.  It is also the Court's understanding that the tape recordings of these

20  interviews have been made available to Plaintiff's counsel for inspection. According to Defendants'

21  Matrix, Defendants have also produced other materials, including department policies and procedures,

22  various reports, photographs, and maps.  The personnel files of Defendants Casey and Bergstrom have

23  also been produced with certain confidential information redacted by agreement of the parties.

24      Defendants argue, however, that the Internal Affairs Investigators' evaluations, opinions, and

25  disciplinary or policy change recommendations are irrelevant and/or are protected from disclosure

26  under the official information privilege.  In addition, Defendants argue that policies and procedure

27  documents regarding employee termination or employee performance reviews would only be relevant to

28  the Plaintiff's *Monell* claim.  Because the Court has precluded *Monell* discovery based on Defendant's

4

1    stipulation, however, Defendants argue that discovery of such information is irrelevant and/or

2    unnecessary.  In support of their assertion that such documents are protected from disclosure by the

3    "official information" privilege, Defendants have provided an affidavit from Assistant Sheriff Richard

4    D. Marshall.  *See Defendants' Explanatory Memorandum (#59).*

5            Assistant Sheriff Marshall states in his affidavit that the Sheriff's Department maintains

6    information and opinions contained in its internal affairs reports and recommendations in strict

7    confidence.  *Id.,* ¶ 3.  He further states that Defendants have already produced the factual information

8    gathered during the internal affairs investigation.  In support of Defendants' assertion of the "official

9    information" privilege, Assistant Sheriff Marshall states:

10                   6.  The non-factual portions of the internal affairs investigations
              should not be disclosed because release of these opinions and conclusions
11            of the Department's officers would threaten the Department's legitimate
              confidentiality and security interests.  Should the portions of the report
12            upon which the Department has invoked the Official Information
              Privilege be produced, this is likely to have a detrimental impact on
13            investigations performed by the Internal Affairs Division, which will also
              adversely impact the improvement of training and programs that results
14            from appropriate investigations and conclusions.

15   *Id.,* ¶ 6.

16           The affidavit also raises the "chilling effect" that disclosure of the materials would have on the

17   willingness of witnesses to speak with investigating officers if their statements were produced in

18   subsequent litigation.  *Id.,* ¶ 6. c.  The affidavit also asserts that disclosure of the investigators'

19   opinions, conclusions and recommendations under a protective order will not adequately protect Nye

20   County's interests in confidentiality.  In this regard, Assistant Sheriff Marshall states that Plaintiff

21   Robert Smith is a "member of a local anti-government organization that seeks to obtain and disclose

22   confidential government information."  *Id.,* ¶ 7.  He also cites the fact that Nye County is a "small

23   town" and that disclosure of confidential information in that environment would be particularly

24   harmful.  *Id.,* ¶ 8.

25           Plaintiff argues that the Internal Affairs Investigators' opinions and conclusions, based on their

26   knowledge of the Sheriff's Office's policies, practices and customs, are highly relevant to his punitive

27   damages claim for purposes of assessing whether the  Defendant Officers acted with malice.  In support

28   of this argument, Plaintiff cites the information revealed during Sergeant Medina's recorded interview

1   of Defendant Casey which demonstrates the many instances in which Defendant Casey allegedly took

2   enforcement action against Plaintiff without conducting a proper investigation.  Plaintiff argues that

3   Defendants' assertion of the "official information" privilege is not sufficient to overcome Plaintiff's

4   right to obtain this relevant information.

5                                                    **DISCUSSION**

6          In *Kelly v. City of San Jose*, 114 F.R.D. 653, 667-668 (N.D.Cal. 1987), the court stated that

7   certain police department records may be protected from disclosure under the qualified "official

8   information" privilege.  The court's formulation of this privilege was based on *Kerr v. Dist. Ct. for*

9   *N.D.Cal.*, 511 F.2d 192, 198 (9th Cir. 1975), which recognized a qualified common law governmental

10  privilege which is sometimes referred to as the official or state secret privilege.  In *Sanchez v. City of*

11  *Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1991) (*en banc*), the court further described this privilege

12  as follows:

> Federal Rule of Civil Procedure 26(c) provides that a court may limit
> discovery to protect from annoyance, embarrassment, oppression, or
> undue burden or expense. Federal common law recognizes a qualified
> privilege for official information. *Kerr v. United States Dist. Ct. for N.D.*
> *Cal.,* 511 F.2d 192, 198 (9th Cir.1975), *aff'd,* 426 U.S. 394, 96 S.Ct.
> 2119, 48 L.Ed.2d 725 (1976). Government personnel files are considered
> official information. *See, e.g., Zaustinsky v. University of Cal.,* 96 F.R.D.
> 622, 625 (N.D.Cal.1983), *aff'd,* 782 F.2d 1055 (9th Cir.1985). To
> determine whether the information sought is privileged, courts must
> weigh the potential benefits of disclosure against the potential
> disadvantages. If the latter is greater, the privilege bars discovery. *Jepsen*
> *v. Florida Bd. of Regents,* 610 F.2d 1379, 1384-85 (5th Cir.1980);
> *Zaustinsky,* 96 F.R.D. at 625.

20         *Kelly* states that the balancing test used in applying the official information privilege should be

21  moderately pre-weighted in favor of disclosure based on the public policy that privileges should be

22  narrowly construed and the policy supporting the enforcement of the civil rights statutes through civil

23  actions filed by aggrieved private parties.  *Kelly*, 114 F.R.D. at 660-662.  *Kelly* cited the non-exhaustive

24  factors listed in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa. 1973) that courts may consider in

25  determining whether the competing interests, on balance, favor disclosure or protection of the

26  information:

> (1) the extent to which disclosure will thwart governmental processes by
> discouraging citizens from giving the government information;  (2) the
> impact upon persons who have given information of having their

6

identities disclosed;  (3) the degree to which governmental self-evaluation
and consequent program improvement will be chilled by disclosure;  (4)
whether the information sought is factual data or evaluative summary;
(5) whether the party seeking the discovery is an actual or potential
defendant in any criminal proceeding either pending or reasonably likely
to follow from the incident in question;  (6) whether the police
investigation has been completed;  (7) whether any intradepartmental
disciplinary proceedings have arisen or may arise from the investigation;
(8) whether the plaintiff's suit is non-frivolous and brought in good faith;
(9) whether the information sought is available through other discovery or
from other sources; and (10) the importance of the information sought to
the plaintiff's case.

*Kelly,* 114 at 663.[2]

Some of these factors are entitled to more weight than others in determining whether the

privilege should be upheld.  For example, the government's interests in protecting the identities of

confidential police informants, or maintaining confidentiality during an ongoing criminal investigation,

are more likely to outweigh the plaintiff's interest in discovering all relevant information.  Conversely,

the government's interest in the confidentiality of officer or witness statements relating to the subject

incident is not as strong when the events are long since past and there will be no criminal prosecution or

internal affairs follow-up arising out of the incident.  *Kelly,* 114 F.R.D. at 662, citing *Spell v. McDaniel*,

591 F.Supp. 1090, 1119 (E.D.N.C. 1984).  The police also have a legitimate interest that their internal

law enforcement procedures not be readily accessible to those who might endanger or frustrate the

police in the legitimate performance of their duties.  Where such procedures are relevant to the officer's

conduct in the case at issue, however, disclosure can generally be made under a well-crafted protective

order that restricts the disclosure of such information to the parties and/or their counsel.

*Kelly* noted that some courts have held that evaluative statements and opinions contained in

internal affairs reports are protected by a privilege that is almost absolute.  The court, however,

questioned the validity of the reasoning underpinning this view.  In discussing the government's interest

---

[2]*Kelly* also adopted a procedural framework to be used in applying the privilege.  The
government is first required to make a threshold showing for application of the privilege by submitting
an affidavit from a high level supervisory or managerial officer setting forth the basis for the assertion of
the privilege.  If the court finds that an insufficient threshold showing has been made for application of
the privilege, it will order the disclosure of the material.  If the court concludes that the government has
met the threshold requirement, only then will it conduct *in camera* review.

in protecting such information from disclosure in subsequent litigation, *Kelly* states:

> There are at least two problems with the reasoning that supports this view. One is that the premise that supports it (that investigating officers will be less forthright in expressing their opinions if there is a risk of disclosure) is empirically unsupported and very debatable. The other problem with this line of reasoning is that after it acknowledges the great importance of enforcing federal civil rights policies it *fails to articulate a reason* for deciding to ascribe less weight to that enforcement effort than to the unmeasured harm to government interests that might follow from disclosure of evaluative material in internal affairs files.
>
> Since privileges operate in derogation of the truth finding process, and since the policies that inform federal civil rights statutes are profoundly important, courts should not use empirically unsupported and debatable assumptions to rationalize shifting a burden of justification away from the party asserting privilege (where the burden of justification classically rests) and on to a plaintiff who is attempting simultaneously to enforce his rights and policies that the people, speaking through Constitutional amendments and federal statutes, have elevated to the highest levels of priority.

*Kelly,* 114 F.R.D. at 664.

In response to the assertion that disclosure of evaluative information will adversely affect the police department's ability to conduct investigations and implement appropriate discipline or training, *Kelly* states that it is, at least, equally valid to assert that the investigating and responding officers' knowledge that their statements and opinions may be disclosed and scrutinized in a subsequent judicial proceeding will encourage them to conduct thorough and honest investigations. *Id.* at 664-665. The court states:

> To summarize, since there is no empirical support for the contention that the possibility of disclosure would reduce the candor of officers who contribute to internal affairs investigations, and since there are solid reasons to believe that that possibility might have the opposite effect (improving accuracy and honesty), there is no justification for offering near absolute protection to the statements that go into such reports or to the opinions and recommendations that conclude them. In fact, for reasons to be developed below, such material should be presumptively discoverable when a plaintiff makes a proper showing of relevance.

*Kelly,* 114 F.R.D. at 665-666.

In deciding whether the internal affairs evaluations and recommendations should be produced, *Kelly* states that courts should consider the other *Frankenhauser* factors, including whether plaintiff's suit is non-frivolous and brought in good faith, the public interest in settlement of cases without lengthy and costly litigation, and whether the information sought is available through other discovery or from

8

other sources. *Kelly*, 114 F.R.D. at 666-668. *Kelly* further stated that during *in camera* review, a court should resolve doubts about relevance in favor of disclosure because the court is not likely to understand the case as well as plaintiff's counsel and is not able to foresee all the ways that plaintiff might be able to use the information. *Id.* at 668. In *Everitt v. Brezzel*, 750 F.Supp. 1063, 1067 (D.Colo. 1990), the court also noted similar concerns regarding the efficacy of *in camera* review. *Everitt* states that a more appropriate procedure is to provide plaintiff's counsel the opportunity to review the documents under a strict confidentiality order and identify those documents which counsel contends are relevant and should be produced.

Several federal district courts have agreed with *Kelly's* statement that there is a lack of empirical support for the argument that limited disclosure of internal affairs investigators' opinions and recommendations will detrimentally effect future investigations or deter the ability of police departments to impose appropriate discipline or further training. *Soto v. City of Concord*, 162 F.R.D. 603, 612-614 (N.D.Cal.1995) states that a general claim that the police department's internal investigatory system would be harmed by disclosure of personnel files, personnel complaints, training records and internal affairs investigation files is not sufficient to meet the *Kelly* threshold test for invoking the official information privilege. *Id.,* citing *Miller v. Pancucci*, 141 F.R.D. 292, 301-02 (C.D.Cal. 1992); *Chism v. County of San Bernadino*, 159 F.R.D. 531, 533-35 (C.D.Cal. 1994). In *Torres v. Kuzniasz*, 936 F.Supp. 1201, 1211-12 (D.N.J. 1996), the court stated that *Frankenhauser's* distinction between the production of factual versus evaluative information no longer has its former significance where a "*Monell* claim" is alleged because supervisory evaluative opinions contained in internal affairs reports are highly relevant to proving municipal liability under § 1983 and should therefore be discoverable. *See also Everitt v. Brezzel, supra.*

In *King v. Conde*, 121 F.R.D. 180, 192-193 (E.D.N.Y. 1988), the court agreed with *Kelly* that internal affairs investigators' evaluations and opinions are not entitled to a high level of protection where there is no ongoing criminal investigation or internal affairs investigation. *King v. Conde* further states:

> Courts should not expend too much effort trying to distinguish "factual" from "evaluative" information in these decisions. This distinction is likely to be quite elusive and often arbitrary. *See Burke v. New York City*

9

1   *Police Department*, 115 F.R.D. 220, 231 & n. 9 (S.D.N.Y. 1987).  Rather,

2   courts should examine specific objections to specific pieces of
3   information in each case, applying a balancing test.

4   Other courts, however, have distinguished between the production of factual versus evaluative

5   information in internal affairs reports and held that the latter are not discoverable at least where there is

6   no pending *Monell* claim.  *See Segura v. City of Reno*, 116 F.R.D. 42, 44 (D. Nev. 1987); *Mueller v.*

7   *Walker*, 124 F.R.D. 654, 657 (D.Or. 1989) and *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D.Va. 1992).

8   In this case, Nye County asserts that disclosure of the internal affairs investigators' opinions,

9   conclusions, and disciplinary recommendations is likely to have a detrimental impact on internal affairs

10   investigations and the improvement of training and other programs.  *See Defendants' Explanatory*

11   *Memorandum (#59), Affidavit of Assistant Sheriff Marshall*, ¶ 6.  As *Kelly* and the other cases state, this

12   generalized interest is not a strong one, especially where no criminal investigation is pending and the

13   internal affairs investigation has been concluded.  *See Kelly, Soto* and *King, supra*.

14   In considering the other factors besides Nye County's interest in protecting the integrity of its

15   internal affairs process, the Court first notes that Plaintiff's lawsuit clearly is not frivolous.  Defendants

16   have already admitted that some of the tasering inflicted on Plaintiff was excessive and would

17   constitute a violation of his Fourth Amendment rights.  There also appears to be a legitimate dispute

18   whether the initial tasering and use of force against Plaintiff was reasonable and whether Defendants

19   Casey or Bergstrom acted with malice.  As to Plaintiff's need for the information, Defendants state that

20   they have already produced all of the factual information gathered during the internal affairs

21   investigation.  This includes transcripts of the recorded statements of the Defendant officers and other

22   officers and witnesses, various Nye County policies and procedures relevant to Defendants' conduct, as

23   well as other reports and records prepared by the Defendant officers regarding the incident.

24   Defendants, therefore, argue that Plaintiff does not need the IA investigators' evaluative opinions or

25   recommendations because Plaintiff has all of the relevant factual information upon which they are

26   based.

27   Discovery of the opinions and recommendations of Defendants' internal affairs investigators is

28   not necessary to establish *Monell* liability because Nye County has stipulated to such liability if the

1  individual Defendants are found liable.  Plaintiff argues, however, that the investigators' opinions and

2  conclusions are also relevant to his punitive damage claims because they may show that the officers

3  knowingly and maliciously violated department customs, policies, or procedures.  Plaintiff

4  distinguishes *Segura v. City of Reno* on this basis because the police chief in that case was sued only in

5  his official capacity and there was no claim for punitive damages against him.[3]

6       In barring discovery of the internal affairs investigators' opinions and recommendations, *Segura*

7  relied on the Ninth Circuit's decision in *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1417-18 (9th

8  Cir. 1986) that such evidence would be inadmissible at trial because they constituted remedial

9  measures.  *Maddox* affirmed the trial court's exclusion of evidence that the individual defendant officer

10  admitted during a disciplinary proceeding that he violated the City's policy on use of the choke hold.

11  The Ninth Circuit held that the district judge did not abuse his discretion in excluding the evidence

12  under Fed.R.Evid. § 403 on the grounds that its prejudicial effect outweighed its probative value and

13  because the disciplinary proceeding constituted a remedial measure within the meaning of  Fed.R.Evid.

14  § 407.  The court noted, however, that it was a "close question" whether the evidence should have been

15  admitted.  The Fourth Circuit's decision in *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006)

16  also supports the conclusion that the opinions and recommendations of Defendant's IA investigators

17  will not be admissible at trial.  *Perkins* held that opinion testimony by police officers who actually

18  witnessed the incident were admissible lay opinion testimony under Fed.R.Evid. § 701.  The  opinion

19  testimony of two police sergeants and a defensive tactics instructor that the defendant used excessive

20  force were inadmissible, however, because their testimony was not based on their personal observations

21  of the incident and were indistinguishable from expert testimony under Fed.R.Evid. § 702.

22       Neither *Maddox* nor *Perkins*, however, involve the issue of whether information contained in

23  internal investigation reports is discoverable.  Under Rule 26(b)(1) relevant information need not be

24

25

26  [3]It appears from the brief discussion in *Segura*, 116 F.R.D. at 44, that the police chief was sued to
the same extent that a municipality would be sued under *Monell*, i.e. that the police chief failed to

27  institute general policies and procedures for training his officers.  To that extent, the court's holding that
the investigators' opinions and recommendations were irrelevant is at odds with *Everitt* and *Torres,*

28  *supra*.

1   admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible

2   evidence.  While the IA investigator's opinions and recommendations may be inadmissible at trial, their

3   reports may nevertheless contain relevant factual information that is subject to discovery.  Defendants

4   have not set forth a persuasive argument that these reports should be protected from any discovery.

5   First, Defendants' ground for asserting the privilege involves the least weighty factor supporting the

6   privilege.  Second, Defendants have already admitted that the Defendant Officers used excessive force

7   in violation of the Fourth Amendment in regard to some of the tasering.  Third, Defendants are willing

8   to accept *Monell* liability in this case rather than engage in burdensome discovery regarding the same.

9   Fourth, Defendants state that they have already produced all of the factual information, including officer

10  and witness statements and other information gathered during the internal affairs investigation.  Thus,

11  limited disclosure of the IA investigators' opinions and recommendations in this case will not adversely

12  affect the efficacy of Defendants' internal affairs process or its ability to implement training procedures.

13  Defendants' chief, and arguably legitimate, concern about producing the internal affairs investigators'

14  reports appears to be that Deputy Huggins went overboard and made unwarranted findings and

15  conclusions that were rejected by her superiors.  In the Court's view, any unwarranted harm to

16  Defendants that might occur through production of Deputy Huggins' reports can be prevented by

17  restricting production, at least initially, to Plaintiff's counsel.

18          Having reviewed the documents submitted for *in camera*  review and in light of the foregoing,

19  the Court finds and orders as follows:

20          **A.**      **Internal Affairs Investigation Documents**

21  _____      **1.**      **Summaries of Witness Statements:**  The internal affairs investigation reports

22  of Deputy Huggins and Sergeant Medina  contain detailed summaries of their interviews of the officers

23  and witnesses.  *See* NYE 000579-672; NYE 002088-2117.  While it appears that most of these

24  interviews were recorded and that transcripts of the statements have been produced to Plaintiff, some of

25  the statements were not recorded.   Although requiring Defendants to produce the investigator's

26  summaries of  interviews is to a large extent duplicative, since transcripts of most of the statements

27  have already been produced, the official information privilege does not shield these summaries from

28  production.  First, they are factual in nature.  Second, the official information privilege is not the

1   equivalent of the work-product doctrine which, in part, protects a party from having to turn over

2   information that it gathered in preparation for litigation and, in effect, doing its adversary's work for

3   free.  The Court therefore orders that these summaries be produced to Plaintiff.

4           **2.    Email Exchanges Between IA Investigator and Defendants' Counsel:**

5   Defendants Casey and Bergstrom answered additional questions through the exchange of emails

6   between Deputy Huggins and the officers' counsel.  *See* NYE 000475-478, NYE 000479-482.  These

7   email exchanges contain relevant information regarding statements made by both Defendants which

8   have apparently not been produced.  The Court therefore orders that these email exchanges between the

9   IA investigator and Defendants Casey's and Bergstrom's attorneys be produced.

10          **3.    Calculations, Maps, Diagrams, Photograph Notes, Etc.:**  Defendants have also

11   withheld other documents which contain the IA investigator's calculations, notes and maps regarding

12   where Deputies Casey and Bergstrom were located at the time they were dispatched to Mr. Smith's

13   residence, the route they followed and how long it took for them to arrive at Plaintiff's residence.  *See*

14   NYE 000262-265.  Defendants have also withheld the IA investigator's diagrams of Plaintiff's

15   residence and adjacent streets with notations of where relevant items were located or events occurred

16   NYE 000411-417.  In addition, Defendants redacted notes that the IA investigator placed on

17   photographs that explained what is depicted relating to the incident.  *See* NYE 000304, 000306-318,

18   000320, 000322-325, 000327.  Although such documents might in some sense be considered

19   evaluative, they also provide factual information relevant to what transpired in the incident.  The Court

20   follows the advice set forth in *King v. Conde*, *supra,* and will not engage in an elusive and arbitrary

21   attempt to characterize these as exclusively evaluative or factual.  The Court therefore orders that these

22   documents be produced to Plaintiff.

23          **4.    IA Investigators' Factual Findings and Conclusions:**  Plaintiff has not shown

24   that the disciplinary recommendations or the changes in department policies and procedures made by

25   the IA investigators, as a whole, are relevant or calculated to lead to the discovery of admissible

26   evidence in this case.  The factual findings and conclusions in Deputy Huggins' report, and to a lesser

27   extent in Sergeant Medina's report, however, also contain factual information that may be relevant to

28   Plaintiff's claim that the individual Defendant Officers acted with malice.  As *Kelly* states, the Court is

1   not as likely as Plaintiff's counsel to foresee all the ways he might be able to use factual information

2   contained in these reports to support his client's case.  Furthermore, given the detail and length of

3   Deputy Huggins' various factual findings, it is impossible for the Court to determine whether all of the

4   relevant facts cited in her report have necessarily been produced to Plaintiff via other documents.  The

5   same is true of Sergeant Medina's report, although to a substantially lesser extent.  The Court also has

6   not been provided with or reviewed all of the documents and information produced by Defendants such

7   that it can determine the accuracy of Defendants' representation that they have produced all factual

8   information upon which the IA investigators' reports are based.

9          Under these circumstances, the best procedure for determining whether Deputy Huggins' and

10  Sergeant Medina's reports contain relevant factual information that should be produced is that adopted

11  in *Everett v. Brezzel*, 750 F.Supp. 1063, 1067, where the court ordered that the internal affairs reports

12  be provided to plaintiff's counsel for *in camera* examination under a confidentiality order which binds

13  counsel as an officer of the court.  Through such *in camera*  examination, Plaintiff's counsel can

14  potentially identify relevant factual information contained in the reports, if any, which has not been

15  previously produced and make a more informed judgment and argument for its production.

16         The Court therefore orders that the portion of Deputy Huggins' report containing her

17  investigation findings and conclusions, NYE 000554-555, NYE 000576-578, and NYE 000673-768 be

18  made available for *in camera* inspection by Plaintiff's counsel, only, for purposes of permitting him to

19  identify any portions therefore which he contends should be produced and made available for use as

20  evidence in this case.  The Court finds that the first part of Deputy Huggins' report, regarding issues to

21  be discussed/terminology, NYE 000556-575 is irrelevant and need not be produced for inspection by

22  Plaintiff's counsel.

23         The Court also orders that Sergeant Medina's report, NYE 002081- 2087, and NYE 002117-

24  2122 also be produced to Plaintiff's counsel, only, for *in camera* inspection to identify those portions

25  which should be produced for use in the lawsuit.  The sections of Sergeant Medina's report which

26  summarize his interviews of witnesses, NYE 002088-2116 (first two paragraphs of page NYE 002116

27  only), however are to be produced subject to the protective order that has previously been entered in

28  this case.  The inspection or use of these summaries is not restricted to Plaintiff's counsel only.

1      It is possible that other documents submitted to the Court for *in camera* review contain relevant

2 information.  The Court will therefore order that the following documents also be made available for *in*

3 *camera* examination by Plaintiff's counsel, only, to determine if they contain factual information

4 relevant to this lawsuit:   NYE 000276-277; NYE 000278-279; NYE 000283-284; NYE 000285-286 ,

5 NYE 000289 ; NYE 000290-291; NYE 000328-361; NYE 000428.

6      Plaintiff's counsel shall not disclose such documents to the Plaintiff or any other persons, except

7 Plaintiff's co-counsel who shall also be subject to the same restrictions imposed by this Order.  After

8 inspecting these documents, Plaintiff's counsel should advise Defendants' counsel which documents or

9 portions thereof, if any, Plaintiff's counsel believes are relevant to his client's claim for punitive

10 damages and should be made available for use in this lawsuit subject to the existing protective order.

11 The parties' counsel should meet and confer and attempt to reach agreement on such documents.  If the

12 parties' counsel cannot reach agreement, then they can raise the issue further with the Court by

13 motion(s).[4]  Except for those documents that the parties' counsel agree or the Court hereafter

14 determines are relevant and may be used in this case, Plaintiff's counsel shall return the documents

15 provided for his *in camera* examination to Defendants' counsel without copying or disclosing the

16 contents thereof to Plaintiff or any other persons.

17      The foregoing is not an invitation for Plaintiff's counsel to simply assert that the reports are

18 relevant and discoverable in their entirety.  Much of the information contained in these documents has

19 probably already been provided to Plaintiff through other documents or is simply not relevant to the

20 claims at issue in this case.  The Court reiterates that it has selected this option because it is not possible

21 for the Court to adequately or fairly determine that there is nothing relevant in these documents that

22 should be produced.  Plaintiff's counsel should be afforded the opportunity to identify such relevant

23 information in the foregoing documents and specifically request that those relevant portions be

24 produced.  Failure to do so will result in the Court granting Defendants' motion for protective order as

25 to such documents.

26 _____

27      [4]The Court will retain the documents submitted for *in camera* review and the parties can refer to any disputed documents by their numbers in any supplemental motions without filing the documents as

28 exhibits.

15

**B.** **Policy and Procedure Documents**

Defendants have already produced various policy and procedure documents, although the nature of the produced policies and procedures is not described. *See e.g.* NYE 000015-29, NYE 000075-81. Defendants have withheld the following policy and procedure documents based on the assertion that they are irrelevant:

1. NYE 000005-6 contain procedures for the termination or dismissal of employees;

2. NYE 000008-14 contain procedures for conducting consent searches, searches pursuant to a search warrant, and conducting searches or seizures without a warrant based on exigent circumstances;

3. NYE 000030-73 contain Policy & Procedure for performance evaluations of Sheriff's Office employees; and

4. NYE 000073-74 contain Policy & Procedure for Sheriff's Office Employee Courtesy to citizens and other employees.

The Court agrees with Defendants that based on the stipulation regarding *Monell* liability and the Court's order precluding *Monell* discovery, Defendants' policies and procedures for the termination or dismissal of employees and policies and procedure for performance evaluations of Sheriff's Office employees are not relevant to the remaining disputed claims. The Court therefore sustains Defendants' relevancy objection to the production of document numbers NYE 000005-6 and NYE 000030-73. Additionally, there is no indication that the execution of a search, with or without a warrant, is an issue in this case. Accordingly, the Court sustains Defendants' relevancy objection to production of document numbers NYE 000008-14. The Court finds, however, document numbers NYE 000073-74, regarding Policy & Procedure for Sheriff's Office Employee Courtesy to citizens and other employees, are relevant to the issues in this case. The Court, therefore, overrules Defendants' relevancy objection as to these documents and orders that they be produced. Based on the foregoing,

**IT IS HEREBY ORDERED** that Defendants' Motion for Protective Order (#19) is **granted**, in part, and **denied**, in part, in regard to the documents submitted to the Court for *in camera* review. Defendants shall produce documents or make them available for *in camera* examination by Plaintiff's counsel in accordance this order. Defendants' motion for protective order is granted as to any

1   documents submitted for *in camera* review which the Court has not ordered produced or made

2   available for *in camera* examination by Plaintiff's counsel.

3         DATED this 24th day of June, 2008.

4

5                              _____

6                            GEORGE FOLEY, JR.
                         United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28